IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR NO 02-00307 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LENORA JEAN AITCHISON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ALL
EVIDENCE SEIZED ALL STATEMENTS OF DEFENDANT
AND FOR EVIDENTIARY HEARING

The Court heard Defendant's Motion on April 10, 2006. Assistant

United States Attorney Michael Kawahara appeared at the hearing on behalf of the

Government; Jack Schweigert, Esq., appeared at the hearing on behalf of

Defendant. After reviewing the motion and the supporting and opposing

memoranda, the Court DENIES Defendant's Motion to Suppress All Evidence

Seized, All Statements of Defendant and For Evidentiary Hearing.

BACKGROUND

On June 27, 2002, Hawaii County Police Department ("HCPD")

conducted a marijuana eradication project, using helicopters, in the Kopua Farm

Lots area of Puna, on the Island of Hawaii. From one of the helicopters, Detective

Sergeant Andrew Burian observed marijuana plants being cultivated in the area immediately surrounding Defendant Lenora Aitchison's ("Defendant") home. Detective Burian also observed Defendant on the property outside her home. After making this observation, Detective Burian directed Detective Marshall Kanehailua and Officer Robert Hironaka (present in another helicopter) to the area. They both confirmed the presence of marijuana on the property. Detective Kanehailua testified that from the helicopter, he specifically observed approximately 50 marijuana plants in the front and back of Defendant's home. Shortly thereafter, the helicopter in which he was a passenger landed in an area off of Defendant's property.

Detective Kanehailua and Officer Robert Hatton entered Defendant's property by stepping over a chain across the driveway and did not observe "no trespassing" or "keep out" signs that Defendant claims were posted at the time. At the hearing, Detective Kanehailua testified that approximately twenty yards into Defendant's property, he observed marijuana plants growing along both sides of the driveway. Upon reaching Defendant's home, Detective Kanehailua identified himself and Officer Hatton as police and ordered Defendant out of the house. He then inquired about her identity; the whereabouts of her ex-husband; whether she had a permit to grow marijuana; and whether she would consent to a search of her

2

home.  Defendant identified herself as Lenora Aitchison and informed Detective

Kanehailua that she was alone at the residence, that the marijuana plants belonged

to her and that she did not have a medical marijuana permit.  During the course of

the conversation, Defendant Kanehailua observed marijuana stalks hanging upside

down through an open window of the residence.  Defendant did not consent to a

search but requested to contact her attorney, Gerard Lee Loy.  Detective

Kanehailua spoke with Lee Loy, informing him that Defendant was being arrested

for commercial promotion of marijuana.  Lee Loy advised Detective Kanehailua to

obtain a search warrant for Defendant's residence.  Officer Hatton arrested

Defendant and advised her of her rights.

          After the submission of the affidavit for search warrant by Detective

Burian at 1:15 p.m. on the same day, the Honorable Sandra Schutte issued a search

warrant for Defendant's residence.  Attached to the affidavit for search warrant

were Detective Burian's observations and other information relevant to the

issuance of the warrant, such as the events that had transpired on June 27, 2002;

confirmation by him that Defendant did not possess a permit for medical

marijuana; his training in the identification of marijuana plants; his participation in

raids and arrests for narcotics violations; his observations about what types of

items are typically recovered in connection with narcotics raids; and items necessary to process and distribute marijuana.

Upon execution of the warrant, HCPD seized 876 marijuana plants ranging from seedlings to 3 feet in height. HCPD also recovered numerous ziploc packets containing marijuana seeds and dried buds as well as a number of drying marijuana plants. Defendant now seeks to suppress all evidence obtained by HCPD, including the statements she made to Detective Kanehailua.

On May 9, 2005, Defendant filed the instant Motion to Suppress All Evidence Seized, All Statements of Defendant, and For Evidentiary Hearing ("Motion"). On June 17, 2005, the Government submitted its Opposition to Defendant's Motion, incorporating by reference its previous Opposition dated August 6, 2004, which was in response to Defendant's original motion to suppress filed by Defendant's previous counsel. On June 28, 2005, Defendant filed a Reply.

## DISCUSSION

As an initial matter, the Court will address Defendant's argument that state law is relevant in analyzing the reasonableness of police conduct. The Government contests Defendant's argument, asserting that all suppression issues are governed by federal standards. Defendant cites <u>Bingham v. City of Manhattan Beach</u>, 341 F.3d 939, 950 (9th Cir. 2003), for the proposition that state law must be

considered in assessing police conduct.[1]  While the Ninth Circuit in <u>Bingham</u> held

that state law is applicable when **evaluating a custodial arrest** by state officials, it

did not extend a general rule that state law must be considered in all suppression

issues.  <u>Id.</u>  Rather, the Ninth Circuit has held that "the admissibility of evidence in

federal court is governed by federal rather than state standards."  <u>United States v.</u>

<u>Chavez-Vernaza</u>, 844 F.2d 1368, 1373 (9th Cir. 1987).  "[E]vidence obtained in

accordance with federal law is admissible in federal courts – even though it was

obtained by state officers in violation of state law."  <u>United States v. Joseph</u>, 829

F.2d 724, 728 n.1 (9th Cir. 1987) (quoting <u>United States v. Rickus</u>, 737 F.2d 360,

363-64 (3d Cir. 1984)) (alteration in original).

      Because we are here dealing with a Motion to Suppress – specifically

one involving evidence obtained from Defendant's property as well as Miranda

issues – federal law governs.  Defendant is not challenging her arrest so any need

to assess state law for the reasonableness of police conduct does not exist.

---

[1] Defendant also cites other cases, but all deal with the arrest of a defendant and the reasonableness issues that arise when assessing Fourth Amendment rights. Here, Defendant's Motion has nothing to do with her arrest.  These cases are therefore distinguishable.

I.    <u>Entry Onto and Securing of Defendant's Property Prior to Issuance of
Warrant</u>

        Defendant's primary argument is that HCPD conducted an unlawful
warrantless search of her property by entering the property after spotting marijuana
during an aerial "Green Harvest Operation."  Defendant maintains that the HCPD
was only able to seize the 800 marijuana plants and/or seedlings pursuant to the
search warrant which was based on facts learned from HCPD's earlier "unlawful"
search.  Defendant seeks suppression of all evidence seized on the grounds that a
warrantless search absent exigent circumstances is a violation of the Fourth
Amendment.

        The Government counters that aerial identification of marijuana plants
does not constitute a search under the Fourth Amendment.  Additionally, the
Government argues that it was reasonable for HCPD Officers to enter Defendant's
property to interview Defendant and to secure the property because Defendant
observed the helicopters over her property.  As such, it was reasonable to infer that
she might have suspected police surveillance and that evidence preservation might
present a concern.

        It is well-established that aerial overflights are not "searches"
requiring a warrant under the Fourth Amendment.  <u>See</u> <u>United States v.</u>

Broadhurst, 805 F.2d 849, 856-57 (9th Cir. 1986); Florida v. Riley, 488 U.S. 445, 445 (1989) ("[T]he Fourth Amendment does not require the police traveling in the public airways at an altitude of 400 feet to obtain a warrant in order to observe what is visible to the naked eye".); Dow Chemical Co. v. United States, 476 U.S. 227, 239 (1986) ("[T]aking of aerial photographs of an industrial plant complex from navigable airspace is not a search prohibited by the Fourth Amendment.")  In fact, "[s]uch observation is precisely what a judicial officer needs to provide a basis for a warrant."  California v. Ciraolo, 476 U.S. 207, 213 (1986).

HCPD's aerial observation of marijuana plants did not constitute a search under the Fourth Amendment.  Consequently, it is unnecessary to address this portion of the "unlawful search" as a warrantless search.  Based on their aerial observation, HCPD entered Defendant's land and secured it while a search warrant was obtained.  Defendant nonetheless argues that the securing of her residence was a "seizure" subject to Fourth Amendment protection.  She contends that the warrant was based on Detective Kanehailua's observations while he "unlawfully searched" her property and that all evidence must be suppressed as "fruit of the poisonous tree."[2]  The Government argues that Detective Burian's aerial

---

[2] Defendant also very briefly argues in a footnote and at one other point in the Motion that HCPD seized marijuana plants prior to seeking a warrant. (Def.'s Mot. at n.45, text accompanying n.75.)  Defendant supports this contention by way

recognition of marijuana plants on Defendant's property provided probable cause

to enter her property in order to secure it pending the issuance of a search warrant.

"The Fourth Amendment protects the rights of people to be secure in

their persons, houses, papers, and effects against unreasonable searches and

seizures." United States v. Hammett, 236 F.3d 1054, 1059 (9th Cir. 2001) (citing

United States v. Place, 462 U.S. 696 (1983)).  This protection has been extended to

the curtilage of one's house "which is defined as 'the area to which extends the

intimate activity associated with the sanctity of a man's home and the privacies of

life.'"  Id. (quoting Oliver v. United States, 466 U.S. 170, 180 (1984) (internal

quotations omitted)).  However, "[l]aw enforcement officers may encroach upon

the curtilage of a home for the purpose of asking questions of the occupants."  Id.

(quoting Davis v. United States, 327 F.2d 301, 303 (9th Cir. 1964) ("[A]nyone may

'openly and peaceably knock [on an individual's door] with the honest intent of

asking questions of the occupant thereof–whether the questioner be a pollster, a

salesman, or an officer of the law.'") (alterations in original)).  Observations made

---

of an affidavit of Robert Patten, one of Defendant's neighbors.  There is no
evidence to support Defendant's claim.  In fact, Officer Hironaka testified at the
hearing that on the same day as the incident in question, there was a counter-
canabis operation involving the eradication of marijuana plants taking place near
Defendant's property in the adjacent Eden Rock subdivision.

by officers while attempting to speak to occupants do not violate the Fourth Amendment. Id. (citing United States v. Hersh, 464 F.2d 228, 230 (9th Cir. 1972)).

Although Defendant repeatedly argues that HCPD "searched" her home without a warrant, it is clear even from her facts that HCPD never entered her residence. HCPD entered onto her property for the purpose of asking questions of Defendant, who they observed from the air, and while on the property made observations of marijuana plants in plain view **outside** the home as well as drying marijuana stalks through an open window. But prior to entering onto Defendant's property, Detectives Burian and Kanehailua and Officer Hironaka observed marijuana plants around Defendant's residence via helicopter.

Defendant, in her Reply, argues that Hammett is not controlling in the instant case because it is factually distinguishable.[3] Defendant focuses on the fact that while the defendant in Hammett had a no trespassing sign at the entry of the property, police entered the property from another point and did not see the sign. Defendant notes that here, the only access for HCPD to enter her property was a

---

[3] Defendant insists that United States v. Haddix, 239 F.3d 766 (6th Cir. 2001) is the more applicable case. The Court disagrees. First, Haddix is a Sixth Circuit case, which is not binding on the Court. Second, Hammett, a Ninth Circuit case, is factually similar, having involved a property on the Island of Hawaii where marijuana was being cultivated and where officers entered onto the property after making aerial observations.

driveway that was chained off and where "no trespassing" and "keep out" signs were posted. Therefore, Defendant proffers that the "good faith" investigation in <u>Hammett</u> does not exist here. This argument is without merit.

Even if HCPD crossed the chain to enter Defendant's property, they had probable cause to enter the property. As already discussed, Detectives Burian and Kanehailua and Officer Hironaka had seen marijuana plants during their aerial observation and also spotted Defendant on the property. It was entirely reasonable for Detective Kanehailua and Officer Hatton to therefore enter the property to ask questions of Defendant regardless of the presence of a chain across the driveway and the allegedly posted signs. At the hearing, both Detective Kanehailua and Officer Hatton testified that they did not notice any signs posted at the entry of Defendant's property or past the entry. Although Defendant attached photographs to her Motion (also admitted as Defense Exhibits B and C at the hearing) which portrayed posted signs at the entry of her property and past the entry, these photographs are not necessarily accurate representations of how the entry to Defendant's property looked on June 27, 2002. Defendant testified that the signs were present at the time HCPD entered her property, but the photographs were not taken until approximately March 7, 2005, nearly three years later.

Regardless of whether the signs were posted, Detective Kanehailua and Officer Hatton had more probable cause to enter onto the property than the officers in <u>Hammett</u> because they identified marijuana plants from the aerial observation (whereas <u>Hammett</u> officers only suspected the presence of marijuana) and they saw Defendant (<u>Hammett</u> officers did not observe any people). HCPD's concern that Defendant likewise observed them and might destroy evidence is valid. Therefore, HCPD lawfully entered the curtilage of Defendant's property for the purpose of speaking with her and had probable cause to do so based on their aerial observation of marijuana plants and her presence on the property.

Defendant also takes issue with the alleged unlawful search by Detective Kanehailua; that is, his observation of the 50+ marijuana plants on her property near her residence and the hanging marijuana stalks through an open window of the residence. Detective Kanehailua testified that he saw the 50+ marijuana plants from the helicopter and again observed some of these plants while walking along Defendant's driveway to reach her residence. As already established, aerial observation is not a search under the Fourth Amendment. Additionally, under the plain view exception, Detective Kanehailua's observation of the marijuana plants along Defendant's driveway does not amount to an unlawful search.

11

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."  Id. at 1061 (quoting Harris v. United States, 390 U.S. 234, 236 (1968)) (quotations omitted).  Two requirements must be met to satisfy the plain view exception:  "(1) the officers must be lawfully searching the area where the evidence is found; and (2) the incriminatory nature of the evidence must be immediately apparent."  Id. (citing Roe v. Sherry, 91 F.3d 1270, 1272 (9th Cir. 1996)).

In this case, the Court has already determined that Detective Kanehailua and Officer Hatton properly encroached upon the curtilage of Defendant's home for the purpose of asking her questions.  Any observations made by them while attempting to speak to Defendant do not violate the Fourth Amendment.  Because Detective Kanehailua had a right to be in the position to observe the marijuana plants along Defendant's driveway based on his aerial observations and the fact that he was en route to Defendant's residence for the purpose of questioning her, the viewing of the plants did not constitute an unlawful search.  Moreover, the incriminatory nature of the 50+ marijuana plants was immediately apparent, especially to someone with Detective Kanehailua's

12

experience.[4]  It is clear that Detective Kanehailua did not conduct an unlawful

search by observing the 50+ marijuana plants on Defendant's property.

Similarly, Detective Kanehailua's observation of the marijuana

through the window did not constitute a search under the Fourth Amendment and

thus did not violate Defendant's constitutional rights.  Id. at 1059-60 (quoting

United States v. Garcia, 997 F.2d 1273, 1279 (9th Cir. 1993) ("We have held that

officers walking up to the front door of a house can look inside through a partially

draped open window without conducting a Fourth Amendment search.")).  He had

a legal right to be there and a legal right to look through the open window.

Defendant has not argued and the facts before the Court do not indicate that

Detective Kanehailua had to make any contortions to observe the hanging

marijuana stalks.  Furthermore, based on his experience, the incriminatory nature

of the stalks was immediately apparent.

Based on the foregoing, the Court concludes that the aerial

observation, and observation of 50+ marijuana plants and hanging marijuana stalks

did not constitute unlawful searches.  Thus, all were proper bases of probable cause

---

[4] He testified at the hearing that he has in excess of 100-200 hours as a
marijuana spotter from the air and is thus able to accurately determine altitude as
well as identify marijuana from around 500 feet above the ground.

included in the affidavit for search warrant.  Section III will further discuss the

validity of the search warrant.

II.    Defendant's Statements to Officers

Defendant additionally moves to suppress statements made by

Defendant to Officers outside her home because they were extracted in violation of

the Fifth Amendment.  Defendant specifically claims that she should have been

advised of her Miranda rights prior to being questioned because the Officers'

questioning amounted to an "interrogation."  The Government asserts that a

defendant is only entitled to Miranda warnings when he or she is in police custody,

or deprived of freedom in any significant way.  Because Officers questioned

Defendant outside her home for only a brief duration prior to any arrest, the

Government contends that Miranda advisement was not necessary as Defendant

was not in custody.

"An officer's obligation to administer Miranda warnings attaches only

where there has been such a restriction on a person's freedom as to render him in

custody."  United States v. Norris, 428 F.3d 907, 912 (9th Cir. 2005) (quoting

United States v. Crawford, 372 F.3d 1048, 1059 (9th Cir. 2004) (en banc) (citation,

alteration and internal quotation marks omitted)) (quotations omitted).  To find that

a person is in custody, there must be "a formal arrest or restraint on freedom of

movement of the degree associated with a formal arrest." Id. (quoting Crawford,

372 F.3d at 1059) (quotations omitted).  In such an inquiry, the Court must

"examine the totality of the circumstances from the perspective of a reasonable

person in the suspect's position." Id. (quoting Crawford, 372 F.3d at 1059 (citation

omitted)) (quotations omitted).  However, "[t]he inquiry focuses on the objective

circumstances of the interrogation, not the subjective views of the officers or the

individual being questioned." United States v. Kim, 292 F.3d 969, 973 (9th Cir.

2002) (citing Stansbury v. California, 511 U.S. 318, 323 (1994)).  In other words,

the Court "must determine whether 'the officers established a setting from which a

reasonable person would believe that he or she was not free to leave.'" Id. at 973-

74 (citations omitted).  Relevant factors to the inquiry include "(1) the language

used to summon the individual; (2) the extent to which the defendant is confronted

with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the

duration of the detention; and (5) the degree of pressure applied to detain the

individual." Id. at 974 (quotations omitted).

        It is clear that under the circumstances in this case, Defendant was not

in custody and therefore not entitled to Miranda warnings.  Defendant's contention

that she was subject to "interrogation" is not sufficient to trigger Miranda rights.

Her conclusory allegation that she was in custody because HCPD officers asked

15

questions of her is likewise without merit.  The evidence before the Court is that
Defendant was not placed under arrest prior to her conversation with Detective
Kanehailua.  The evidence also shows that Defendant was not restrained in the
least, much less to the degree associated with formal arrest.  The Government
argues that the questioning was very brief and conducted on Defendant's own
property (outside the residence) such that she was not in custody for Miranda
purposes.

Detective Kanehailua testified that Defendant was in the house when
he and Officer Hatton entered the property and that he called her out by stating
"police, come out."  Once Defendant came out of the house, Detective Kanehailua
asked if anyone else was present, whether Defendant had a medical marijuana
permit and whether Defendant would consent to a search.  He asked for
Defendant's consent to search after pointing out the marijuana stalks hanging in the
house, which were visible through the window.  Defendant claims that she was
also repeatedly asked questions about Mexicans, her ex-husband, and for whom
she was growing plants.  Detective Kanehailua testified that these questions were
not raised until Defendant was at the station, following her arrest.  The Court finds
Defendant to be non-credible based on her testimony at the hearing.  Even if she
were credible, however, the brief duration of questioning, the lack of detention, and

the fact that she was standing right outside her residence cuts against Defendant's argument that she was in "custody" and entitled to Miranda warnings.

The Ninth Circuit has held that even in cases where a defendant was detained by law enforcement officers and not free to go, this did not amount to "custody" for Miranda purposes.  United States v. Butler, 249 F.3d 1094, 1098 (9th Cir. 2001) (citing Berkemer v. McCarty, 468 U.S. 420, 440 (1984); United States v. Bautista, 684 F.2d 1286, 1291 (9th Cir. 1982)); see also Crawford, 372 F.3d at 1060 (Under the totality of the circumstances, questioning a defendant at the FBI office when he was not under arrest and free to leave did not amount to custodial interrogation and Miranda warnings were not required); Norris, 428 F.3d at 912 (no custody where the defendant voluntarily accompanied police to station; told that cooperation was voluntary; that he was free to terminate the interview at any time; that he was not under arrest; and never restrained in any way).  As such, the Court finds that Defendant is not entitled to suppression of her statements to Detective Kanehailua.

III.    Validity of Search Warrant/Defendant's Entitlement to Evidentiary Hearing

Defendant also attacks the search warrant as *ipso facto* invalid on the following grounds:  1) it is premised on information obtained in violation of her constitutional rights; 2) it is premised on the partially false and/or recklessly

incomplete Burian Affidavit; and 3) it is premised on evidence viewed from a place where HCPD had unlawfully entered.  In addition, Defendant contends that she is entitled to an evidentiary hearing to determine whether the search warrant was properly issued.  The Government disputes Defendant's entitlement to an evidentiary hearing and also proffers that the affidavit for search warrant provided a substantial basis for Judge Schutte to find probable cause to search Defendant's property.

As an initial matter, the Court determines that the warrant cannot be invalidated for reasons 1 and 3 extended by Defendant, as the Court has already found that Defendant's constitutional rights were not violated and that HCPD lawfully entered Defendant's property.  Even if the Court had not made such a finding, however, the aerial observation alone could have provided a substantial basis to conclude that probable cause existed.  The only relevant issue is therefore the allegedly false and/or recklessly incomplete affidavit for search warrant and whether Defendant is entitled to an evidentiary hearing on the matter.

"[A] defendant is entitled to a suppression hearing only upon a substantial preliminary showing that a governmental agent intentionally or recklessly made false statements necessary to the finding of probable cause." Hammett, 236 F.3d at 1058 (citing Franks v. Delaware, 438 U.S. 154, 171 (1978)).

18

Specifically, "'[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, <u>and those allegations must be accompanied by an offer of proof</u>.'" <u>Id.</u> (quoting <u>Franks</u>, 438 U.S. at 171). However, "if 'material that is the subject of the alleged falsity or reckless disregard is set to one side, [and] there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.'" <u>Id.</u> at 1059 (quoting <u>Franks</u>, 438 U.S. at 171) (alteration in original). Two implications arise from the foregoing law: "(1) 'misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause,'; and (2) even if the affiant's statements are made intentionally or recklessly, such statements will not invalidate the entire warrant provided 'there remains sufficient content in the warrant affidavit to support a finding of probable cause.'" <u>Id.</u> at 1058 (quoting <u>Franks</u>, 438 U.S. at 172) (citation omitted).

Defendant maintains that the affidavit contained falsities and was recklessly incomplete. In particular, Defendant expresses concern over the failure of Detective Burian to include the fact that 1) more than one helicopter was involved;[5] 2) the helicopters were flying at an altitude well below 500 feet; 3) at

---

[5] According to the Patten Declaration, as many as five helicopters were observed.

least three officers seized marijuana plants to confirm the presence of marijuana; and 4) at least five other armed military-type officers "made contact"[6] with Defendant and searched her property for evidence. Defendant's "offer of proof" includes the declarations of Defendant and her neighbor, Robert Patten.

There is no evidence to indicate recklessness on the part of Detective Burian with respect to the number of helicopters involved in the operation. He does not specify the total number of helicopters in the affidavit, but also does not, as Defendant accuses, represent that only one helicopter was involved. In fact, the affidavit indicates that Detective Burian was in one helicopter and that Detective Kanehailua and Officer Hironaka were in another helicopter. (Affidavit for search warrant, observation of affiant at 1.) This is very clear, as Detective Burian attests that after he observed marijuana on Defendant's property, he directed Detective Kanehailua and Officer Hironaka to that area and that they landed in the area. (Id.) Defendant's argument with respect to the helicopter fails. The Court notes that the number of helicopters is irrelevant to the validity of the search warrant anyway, and that Defendant has misconstrued the plain language of the affidavit.

---

[6] Defendant used this terminology and put it in quotes. It is unclear what "made contact" really means because in her Declaration, Defendant never represents that any military-type officers actually came in contact with her. She only states that 5 individuals dressed in military camouflage searched through her property. (Def.'s Decl. at ¶ 12.)

Defendant's assertion that the helicopters were flying at well below

500 feet (Detective Burian represented that they were flying at an altitude in excess

of 500 feet from the ground in the affidavit) is only supported by her personal

opinion, as stated in her declaration.  She states that "I noticed two helicopters . . .

flying in the airspace above me and around my property at approximately treetop

level" and that "the second helicopter flew down to about ten feet above the ridge

cap of my home."  (Def.'s Decl. at ¶¶ 5, 9.)  Other than her personal belief as to the

altitude of the helicopters, Defendant does not appear to be and has not represented

that she possesses the expertise to determine the altitude of helicopters from a

vantage point on the ground.  Moreover, Detective Burian attested that the

helicopter that he was in was flying at an altitude in excess of 500 feet.  Defendant

has not presented an offer of proof that the helicopter that contained Detective

Burian flew at an altitude below 500 feet, or anything contrary to what he

represented in his affidavit.  In fact, at the hearing, the Court viewed a home video

shot by Robert Patten on June 27, 2002 (introduced into evidence as Government's

Exhibit 5).  The time stamp on the video indicates that it was shot after Detective

Burian made his observation.  However, of importance is the fact that despite

Defendant's repeated assertion that the helicopters were flying at "treetop level,"

the video undoubtedly showed helicopters flying at an altitude significantly higher

21

than "treetop level."  Detective Kanehailua, present on the stand during the

viewing of the video, testified that if the helicopters were anywhere near "treetop

level," the downdraft would shake the camera and create such noise that Patten's

narration of the events would not be audible on the tape.  Throughout the clip

viewed by the Court, Patten's voice was audible and the picture was steady.  Based

on this evidence, the Court finds Defendant's testimony regarding the altitude of

the helicopters to be non-credible and any argument to that effect to be utterly

without merit.

Defendant's two other allegations of falsity or reckless

incompleteness – that officers seized marijuana plants prior to the issuance of the

warrant and that military-type officers "made contact"[7] with Defendant and

searched her property for evidence – even if true,[8] do not warrant a hearing.

_____

[7] Again, although Defendant argues this in her Motion, she presents no evidence to support the allegation that the military-type individuals "made contact" with her.

[8] The Court finds Defendant's allegations to be without merit.  As the Court has repeatedly noted, Defendant is not a credible witness.  Her assertions lack supporting evidence and in fact completely contradict the testimony of three HCPD Officers.  Her version of the events are rather far-fetched.  All the bases upon which Defendant attacks the warrant as invalid are clear attempts to create issues where there are none.  In her Declaration, Defendant claims that 5 individuals dressed in military fatigues searched through her property.  Detective Kanehailua testified that no one entered Defendant's property dressed in military fatigues and that he and Officer Hatton were dressed in dark navy flight suits, marked on the

Defendant has submitted an offer of proof in the form of Declarations.  But

because the affidavit contains sufficient content to support a finding of probable

cause, even after the allegedly false or recklessly incomplete material is set aside, a

hearing is not required to establish the validity of the search warrant.  In other

words, if the facts provided by Detective Burian in the affidavit from the point that

Detective Kanehailua and Officer Hatton entered the property onward were set

aside, the aerial observation would still provide adequate probable cause for the

warrant, as discussed below.

          The Fourth Amendment provides that "no Warrants shall issue, but

upon probable cause, supported by Oath or affirmation, and particularly describing

the place to be searched, and the persons or things to be seized."  U.S. Const.

amend. IV.  Four requirements must be met for a warrant to be valid:  1) probable

cause; 2) support by oath or affirmation; 3) particularity in describing the place to

be searched; and 4) particularity in describing the persons or things to be seized.

See Groh v. Ramirez, 540 U.S. 551, 557 (2004).

---

front and back with "police."  During her testimony, Defendant changed her story
and testified that at least 5 officers first came onto her property - Detective
Kanehailua, Officer Hatton and 4 others.  She then stated that actually, the 4 others
came 10-20 minutes after Detective Kanehailua and Officer Hatton.  Indeed, it is
difficult, if not impossible, for the Court to accept Defendant's testimony as true
because of repeated inconsistencies.

"Probable cause 'means less than evidence which would justify condemnation, and . . . may rest upon evidence which is not legally competent in a criminal trial.'"  U.S. v. Bridges, 344 F.3d 1010, 1014-15 (9th Cir. 2003) (citing United States v. Ventresca, 380 U.S. 102, 107 (1965) (internal quotation marks and citations omitted)).  A totality of the circumstances approach is traditionally employed in a probable cause determination.  Id. at 1014.  The Supreme Court has said that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983) (quotations omitted)).   A reviewing court's duty "is simply to ensure that the magistrate had a substantial basis for . . . conclu[ding] that probable cause existed."  Id. (quoting Illinois, 462 U.S. at 238 (quotations omitted) (alterations in original)).

The Court looks at the totality of circumstances in a probable cause determination.  All that is required of a judge issuing the warrant is to make a practical decision, based on all the circumstances set forth in the affidavit before the court, that a fair probability exists that contraband or evidence of a crime will be found in a particular place.  The only issue that the Court needs to address here

24

is whether the warrant was supported by adequate probable cause, as Defendant does not contend that any of the other requirements were lacking. Related to this, however, is the matter of the supporting affidavit, based on Defendant's contention that Detective Burian's false and recklessly incomplete affidavit invalidates the warrant. As the Court already discussed, even if all the facts that support a finding of probable cause (from the point the officers entered Defendant's property) were eliminated and the affidavit only contained the facts related to the aerial observation, there was still sufficient probable cause for Judge Schutte to issue the warrant. Detective Burian first observed marijuana plants on Defendant's property and this observation was confirmed by Detective Kanehailua and Officer Hironaka. It would have been reasonable for Judge Schutte to decide, based on three HCPD officers' observations, coupled with Detective Burian's experience with narcotic identification, that a fair probability existed that contraband or evidence of a crime would be found on Defendant's property. Accordingly, the Court finds that the search warrant was valid because Judge Schutte had a substantial basis for concluding that probable cause existed and that all evidence recovered as a result need not be suppressed.

IV.    Use of Sense-Enhancing Technology

At the time Defendant submitted her Motion, defense counsel was seeking confirmation about the use of sense-enhancing technology was used in the operation over Defendant's home.  Defendant argues that it is her personal belief that her plants could not have been seen from the air without the aid of sense-enhancing equipment.

The Government has represented that no mechanical, electronic or other form of surveillance, or sense enhancing equipment was directed against Defendant, her property, or any adjacent properties.  (Govt.'s Opp., Ex. 4.) Because no sense-enhancing technology was utilized, Defendant's argument is without merit.  As with Defendant's personal belief that the helicopters were far below 500 feet in altitude, this appears to be nothing more than her attempt to create an issue based on her own speculation, without any evidence to support such allegations.

CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion to Suppress All Evidence Seized, All Statements of Defendant and For Evidentiary Hearing.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 24, 2006.



_____
David Alan Ezra
United States District Judge

United States of America v. Lenora Jean Aitchison, CR No. 02-00307 DAE; ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ALL EVIDENCE SEIZED, ALL STATEMENTS OF DEFENDANT AND FOR EVIDENTIARY HEARING