IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) CR. NO. 02-0307 DAE |
|---|---|
| Plaintiff, | ) MEMORANDUM OF LAW |
| vs. | ) |
| LENORA JEAN AITCHISON, | ) |
| Defendant. | ) |

MEMORANDUM OF LAW

On April 24, 2006 this Court entered its order denying Ms. Aitchison's motion to suppress. (Exhibit 1) However, this Order committed a manifest error of law and failed to include essential findings required by Fed.R.Cr.P.12(d), warranting this Court's reconsideration.

ARGUMENT

1. Probable cause did not warrant entry onto Defendant's property absent exigent circumstances

The Court's Order commits a manifest error by, *inter alia*, ignoring the mandates of the Fourth Amendment. In that regard, when Detective Kanehailua and Officer Hatton came onto Defendant's property by crossing a chain

blocking her driveway. This was a trespass for the chain demonstrated the Defendant's intent to exclude intruders. (H.R.S. § 708-815)[1] Warrantless searches by a government agent are unreasonable and invalid unless based on probable cause **AND** executed pursuant to a warrant. Katz v. U.S., 389 U.S., 347, 357 (1967). This Court's ruling that "recognition of marijuana plants on Defendant's property provided probable cause to enter her property in order to secure it pending the issuance of a search warrant" (Order @ 7-8) is not the law. Rather, the only way these police officers could have lawfully entered Defendant's property would be pursuant to some exception to the warrant requirement. In this case, the exception they proferred was "exigent circumstances." However, such conditions did not exist.

More specifically, Detective Burian simply wrote in his affidavit police officers went onto the property "in order to prevent destruction of evidence that

---

[1] It is unclear what weight the Court put on the existence or non-existence of No Trespassing signs, i.e.,
> **[r]egardless** of whether the signs were posted, Detective Kanehailua and Officer Hatton had more probable cause to enter onto the property than the officers in Hammett because they identified marijuana plants from the aerial observation (whereas Hammett officers only suspected the presence of marijuana) and they saw Defendant (Hammett officers did not observe any people).
> Order 10-11

However, the existence of these signs is indisputable. See Declarations of Robert Patten, Roberta Patton, Jannette Gouker, and George Walls. (Exhibits 5-8)

2

was in the area," which this Court concluded was "valid." (Order @ 11)

It must be reiterated that the government bears a **HEAVY** burden to demonstrate an urgent need to justify a warrantless search based on exigent circumstances and must demonstrate **SPECIFIC AND ARTICULABLE** facts to justify their entry. Lalonde v. County of Riverside, 204 F.3d 937, 956-957 (9th Cir. 2000); U.S. v. Shephard, 21 F.3d 933, 938 (9th Cir. 1994); U.S. Napue, 834 F.2d 1311, 1326 (7th Cir. 1987). This Court manifestly erred by not holding the police to this heavy burden. Further, the police officers belief must be a reasonable one based on the "totality of circumstances that the contraband will **IMMINENTLY** be destroyed." U.S. v. Ojeda, 276 F.3d 486, 488 (9th Cir. 2002); U.S. v. Rodriguez, 869 F.2d 479, 485 (9th Cir. 1989). Again, this Court clearly erred by not holding the police to this heavy burden. Moreover, the government **MUST ASSERT** "imminence" and the mere possibility or generalized fear that a party will destroy evidence when faced with a warrant is not sufficient.[2]

Logistically, the contention Ms. Aitchison could ever pull out the 50+ plants allegedly seen from the air by the police,[3] let alone destroy them on property that

---

[2] The most recent case on this point (not yet published but collecting other cases), is U.S. v. Martinez, 2006 WL 1080252 (N.D. Ohio 2006), which lists several cases demanding such proof @ p. 3. (Exhibit 4)

3

does not even have a flush toilet, is not reasonable. In that regard, one court has rejected an argument for exigent circumstances when officers searched a dwelling containing 15 kilograms of cocaine because of its reasoning that it would be difficult to quickly dispose of this amount of cocaine in the time it takes officers to knock and announce. U.S. v. Bates, 84 F.3d 796 (6th Cir.). Moreover, the undisputed fact is that the Defendant went into her house when the police helicopters were flying overhead and had to be ordered out of her home by Detective Kanehailua after landing his helicopter outside her driveway.

2.  The Court's order violates Murry v. U.S.

This Court, by its Order @ 25, directed,

> . . . even if all the facts that support a finding of probable cause (from the point the officers entered Defendant's property) were eliminated and the affidavit only contained the facts related to the aerial observation, there was still sufficient probable cause for Judge Schutte to issue the warrant.

---

[3] The Court's conclusion that the aerial observations were in any way meaningful for probable cause is objected to for not only could Officer Hatton not be clear from his view from the air if Defendant was a male or female, he had the Defendant wearing a white T-shirt. Conversely, Detective Kanehailua had the Defendant wearing a red T-shirt when in fact the Defendant was not wearing a shirt at all. To conclude these officers had probable cause from their aerial observations ignores this disparity.

4

For the Court to deny the motion to suppress on this basis is manifest error. Far more is required than simply excising evidence from the unlawful search. As directed in <u>Murray v. U.S.</u>, 1108 S.Ct. 2529, 2536 (1988),

> The ultimate question, therefore, is whether the search pursuant to warrant was in fact a **<u>GENUINELY</u>** independent source of the information and tangible evidence at issue here. This would **<u>NOT</u>** have been the case if the agents' decision to seek the warrant was **<u>PROMPTED</u>** by what they had seen during the initial entry, **<u>OR</u>** if information obtained during that entry was presented to the Magistrate and **<u>AFFECTED</u>** his decision to issue the warrant.

In determining whether the tainted evidence **<u>AFFECTED</u>** Judge Schutte to issue a warrant, there was far more "tainted" evidence presented than was provided from the aerial observation. In that regard, the "tainted" evidence gathered by Detective Kanehailua and Officer Hatton confirmed at least 50 marijuana plants were growing on and around Defendant's property, several marijuana stalks were hanging upside down being dried inside her residence, the Defendant was not a registered marijuana user so that any marijuana on her property would be unlawful, the Defendant was the only one at the residence, and the marijuana plants on her property were all hers. Where tainted information is of major importance or forms more than a minor portion of the information contained in the affidavit supporting a search warrant, doubt may arise as to whether the warrant should have been

issued by the magistrate without the tainted information. U.S. v. Grunsfeld, 558 F.2d 1231 (6th Cir. 1977); U.S. v. Langley, 466 F.2d 27 (6th Cir. 1972).

Further, the search warrant itself that was issued by Judge Schutte @ 1:26 p.m. (Exhibit 9) reflects a decision that was clearly "affected" by the tainted evidence. More specifically, the warrant includes the right to search **INSIDE** the residence, whereas, no marijuana was ever reported being seen in the house from the air.

Further, the decision to seek a search warrant was **ADMITTEDLY** prompted by the tainted evidence obtained from the unlawful search. In that regard, Detective Burian chose to include reference to the tainted evidence when drawing his opinion that the marijuana plants he observed from the air were marijuana. His choice of words when drawing his opinion was "based on the facts contained in this affidavit." (Burian affidavit, p. 4)  These facts would not be limited to what was allegedly seen from the air but necessarily included what he saw from the unlawful search of Defendant's property.

Further proof that the tainted evidence **PROMPTED** the police to get a warrant came from cross examination of Detective Kanehailua at the hearing based on his unredacted police report (given to defense counsel the Friday afternoon before the Monday morning hearing). This information was previously redacted so

6

that Defense counsel did not know of such testimony. During this cross examination, the Detective admitted it was only **AFTER** having come to Defendant's property, observe the marijuana both on the property and hanging upside down inside her residence, question the Defendant and her lawyer about consent to enter the home (which they refused to give), and the attorney actually **ADVISED** him to obtain a search warrant that,

> [A]t **THAT** point I informed Detective Andrew BURIAN of my information and requested that he **ATTEMPT** to obtain a search warrant to search the structure.

There is no testimony in the record disputing this admission. As such, it is clear that these particular police officers would **NOT** have not been prompted to seek a search warrant without the information learned of from the unlawful search. In other words, the getting of the warrant was a transparent attempt to sanitize the fruit of an unlawful search.

Regardless, a District Court must explicitly find that the agents would have sought a warrant without any prompting from the information they gathered through the unlawful search. Murray *supra* 108 S.Ct. 2536; U.S. v. Dessesaure, 429 F.3d 359, 369 (1st Cir. 2005); U.S. v. Hill, 55 F.2d 479, 481 (9th Cir. 1995). Without such an essential finding, an Order denying suppression will be reversed.

*Id.* The Court must also find such tainted evidence did not affect Judge Schutte's decision. U.S. v. Salas, 879 F.2d 530, 539 (9th Cir. 1989).

3.   <u>The Defendant's right to an evidentiary hearing was warranted.</u>

It is somewhat confusing as to why the Court went on to analyze Defendant's right to a hearing because an evidentiary hearing was held on April 10, 2006. However, in its Order, the Court made certain rulings that must be challenged and warrant a further evidentiary hearing.

As to that portion of the Court's ruling dealing with the half-truths in Detective Burian's affidavit, the Court ignores the major half-truths, such as the existence of a chain across the Defendant's driveway and the No Trespassing signs.

Further, the Court mentions its review of the video tape by Robert Patten. However, the Court limits itself to only that portion viewed "in court," whereas the entire video was put in evidence. Had the Court viewed the entire 20-minute tape, it would have seen marijuana being taken from Defendant's property at approximately 12:45 p.m., which is nearly 45 minutes **BEFORE** the search warrant issued at 1:26 p.m. (See Declaration #1 of Robert Patten dated April 2, 2005 attached to the original motion @ ¶¶ 6 & 9) The video footage where this appears is at marker 2631-2838 and shows marijuana being taken from the

Defendant's property by way of a helicopter with an officer dangling on a rope, carrying what appears to be marijuana plants. This seizure preceded the issuance of the search warrant so as to be unlawful.

A further evidentiary hearing is therefore warranted to explain these points.

CONCLUSION

For the foregoing reasons, the motion for reconsideration must be granted and all evidence suppressed.

Dated: Honolulu, Hawaii, this 8th day of May, 2006.

Submitted by: _____
Jack Schweigert, Esq.
Attorney for Defendant