2006 WL 1080252

Slip Copy, 2006 WL 1080252 (N.D.Ohio)
Only the Westlaw citation is currently available.

United States District Court,
N.D. Ohio,
Western Division.
UNITED STATES of America, Plaintiff,
v.
John A. MARTINEZ, et al., Defendants.
No. 3:05CR781.
April 24, 2006.

Donald S. Bennett, Law Office of Donald S. Bennett, Tiffin, OH, David Lee Klucas, Law Offices of David Klucas, Jeffrey J. Helmick, Helmick & Hoolahan, Martin E. Mohler, Shindler Neff Holmes Schlageter & Mohler, Myron C. Duhart, II, Martin J. McManus, McManus & McManus, Ronald L. Wingate, Samuel Z. Kaplan, Adrian P. Cimerman, Zaner & Cimerman, Stephen D. Hartman, Kerger & Kerger, Sam A. Eidy, Donald H. Cameron, Jack P. Viren, Jr., John W. McMahon, Spiros P. Cocoves, John F. Potts, Toledo, OH, F. Stephen Chamberlain, Lima, OH, for Defendants.
Ava Rotell Dustin, Joseph R. Wilson, Office of the U.S. Attorney, Toledo, OH, for Plaintiff.

## MAGISTRATE'S REPORT *AND RECOMMENDATION*

VERNELIS K. ARMSTRONG, U.S. Magistrate Judge.
**\*1** This is a criminal case in which pretrial matters have been referred to the undersigned magistrate for initial hearing and determination. Pending is the motion of Defendant John A. Martinez to Dismiss Count I of the Indictment with a Supporting Memorandum (Docket No. 222). The government opposes such motion in its omnibus response to pending motions (Docket No. 270, pgs. 18- 24). For the reasons which follow, the magistrate recommends that the motion be overruled.

### BACKGROUND

A fifty-count indictment filed September 8, 2005, charges defendant John A. Martinez with one count of conspiracy to possess with intent to distribute cocaine, cocaine base (crack) and marijuana, in violation of Title 21 U.S.C. §§ 841(a)(1) and 846; two counts of possession with intent to distribute cocaine and cocaine base, in violation of Title 21, U.S.C. § 841(a)(1); and three counts of unlawful use of a communications facility, in violation of Title 21 U.S.C. § 843(b). If convicted as charged, the maximum statutory penalty for the drug conspiracy count is a mandatory twenty years to life imprisonment and/or an $8,000,000 fine or both; a mandatory ten years to life imprisonment and/or a $4,000,000 fine or both for each of the drug possession counts; and up to four years imprisonment and/or a $250,000 fine or both for each of the three unlawful use of communications facility counts. The estimated advisory sentencing guidelines are 235-293 months. The maximum special assessment would be $600 or $100 for each count of conviction.

The indictment alleges that the conspiracy began in or about 1997 and continued through the date of the indictment. The named defendants, together and with other persons, allegedly conspired to distribute and possess with intent to distribute 5 kilograms or more of cocaine, 50 grams or more of cocaine base (crack) and 50 kilograms or more of marijuana in violation of Title 21 U.S.C. §§ 841(a)(1)(b)(1)(A), (b)(1)(c) and 846. The purpose and object as well as the manner and means by which the alleged conspiracy was carried out are also set forth.

The indictment is supported by 234 overt acts with defendant John A. Martinez being identified in sixteen overt acts: 1, 6-8, 30, 34-35, 37, 55, 59, 83, 194- 197 and 211.

In his motion to dismiss, defendant contends that Count I "is defective and deficient and does not sufficiently support the charge ." Defendant argues specifically that the indictment is fatally defective because it: 1) leaves an open ended time frame, 2) the date of the indictment is not the end date of the alleged conspiracy which could have continued beyond the filing date by unindicted conspirators; 3) leaves an open geographical area; 4) leaves an open conspiracy ring by stating "other persons, known and unknown to the grand jury;" 5) fails to state whether more than one conspiracy existed and to define the actual conspiracy defendant joined, 6) and the indictment leaves gaps of time during which no overt acts or other drug activity of defendant is alleged. The government responds that the indictment in question is clearly sufficiently detailed to meet a constitutional challenge.

### ANALYSIS

**\*2** The Sixth Amendment to the U.S. Constitution guarantees a criminal defendant the right "to be

# EXHIBIT 4

informed of the nature and cause of the accusation against him/her. *Russell v. United States,* 82 S.Ct. 1038, 1045 (1962). In general, an indictment is constitutionally adequate "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he/she must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 94 S.Ct. 2887, 2907 (1974); *Russell,* 82 S.Ct. at 1046-47; *United States v. Sturman,* 951 F.2d 1466 (6th Cir.1991), *cert. denied,* 112 S.Ct. 2964 (1992); *United States v. Paulino,* 935 F.2d 739, 749 (6th Cir.1991), *cert. denied,* 112 S.Ct. 315 (1991).

As a general rule, an indictment that tracks the statutory language is sufficient. *Hamling,* 94 S.Ct. at 2907-2908.

Rule 7(c) of the FED. R. CRIM. P. implements the notice requirement and provides that an indictment must be a plain, concise and written statement of the essential facts constituting the offense charged. The rule further states in pertinent part:

It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means....

With this background, the magistrate addresses the specific deficiencies alleged by defendant. Initially, defendant contends that the indictment, by alleging a conspiracy beginning in 1997 and continuing through the indictment date of September 8, 2005, leaves an open ended time frame and argues that the conspiracy could have continued beyond that date by unindicted coconspirators. Neither counsel cite a Sixth Circuit case on this issue. Defendant relies upon *U.S. v. Cecil,* 608 F.2d 1294 (9th Cir.1979) (indictment found deficient because open ended in both directions and failed to place conspiracies within any time frame). In *Cecil,* the indictment alleged that the conspiracy began on or *before* July 1976 and continued until on or *after* October 1975. In this case, the ending date of the conspiracy charged is the filing of the indictment on September 8, 2005. The magistrate agrees with the government position that the precise date of the offense is not required in the charging document. *U.S. v. Brewer,* 1 F.3d 1430, 1437 (4th Cir.1993) (proof that crime occurred reasonably near the date charged in the indictment satisfies the criteria unless time is a material element of the offense or the actual date of the offense implicates the statute of limitations or follows the indictment). The Tenth Circuit found an indictment charging a conspiracy from "before on or about April 6, 1999 to on or about July 5, 1999 to be sufficiently precise as to the time frame in *United States v. Edmonson,* 962 F.2d 1535 (10th Cir.1992) (because the precise dates on which the defendant committed the alleged acts are not necessary). *United States v. Hernandez,* 962 F.2d 1152 (5th Cir.1992); *U.S. v. Giles,* 756 F .2d 1085 (5th Cir.1985). Consequently, defendant's arguments lack merit.

*\*3* Defendant next argues that the indictment leaves open the geographical area, the conspiracy ring and the number of conspiracies existing during the time frame alleged. Defendant also relies upon *Cecil* to support such arguments; however, the *Cecil* case can be distinguished from the indictment filed in this case. In *Cecil,* the court characterized the indictment as "a rather barren document" which made only two specific allegations concerning the conspiracies. 608 F.2d at 1296-1297. The court described the indictment further:

It states that the conspiracies occurred in Arizona, Mexico and elsewhere and offers the names of some of the alleged co-conspirators. The indictment fails to state any other facts or circumstances pertaining to the conspiracy or any overt acts done in furtherance. 608 F.2d at 1297.

In contrast to the *Cecil* indictment, the indictment in this case spans 59 pages, recites the elements of the charge, the amounts of drugs which were allegedly distributed by the conspiracy, the purposes and objects and manner and means of the conspiracy, the alleged role of each defendant and states 234 overt acts.

The court does not address, however, defendant's reliance upon *United States v. Geoffrey A. Clarine,* 2005 WL 1620499 (9th Cir.2005) as the case was unpublished. In the Sixth Circuit, unpublished opinions are not binding authority. *Harper v. Auto Alliance Int'l, Inc.,* 392 F.3d 195, 205 n. 3 (6th Cir.2004).

Defendant's objection that the indictment names other persons known and unknown lacks merit. "A valid indictment may charge a defendant with conspiring with persons whose names are unknown." *U.S. v. Piccolo,* 723 F.2d 1234, 1239 (6th Cir.1983), *cert. denied,* 104 S.Ct. 2342 (1984).

Finally, defendant argues that the indictment is deficient because gaps of years occur in describing Martinez' alleged illegal conduct. Defendant's argument is unpersuasive as the government is not

required to allege or prove overt acts in a drug conspiracy indictment. *U.S. v. Nelson,* 922 F.2d 311, 318 (6th Cir.1990). The indictment clearly sets forth the alleged role of Defendant John A Martinez in the drug conspiracy, its alleged purpose and object, manner and means and 16 overt acts in which Defendant Martinez is identified.. The magistrate finds that the indictment provides defendant with a sufficient description of the charges against him as it tracks the language of the statute, provides him with sufficient notice as to the operative time period of the conspiracy and enables him to plead jeopardy at a later prosecution. *U.S. v. Vassar,* 2006 WL 306651 (Feb. 8, 2006). In balancing the factors set forth in *Russell,* the Court finds that the indictment is sufficiently detailed.

For the foregoing reasons, the magistrate recommends that defendant's motion to dismiss Count One of the indictment be overruled.

This is a criminal case in which pretrial matters have been referred to the undersigned magistrate for initial hearing and determination. Pending before the court is Defendant Ricardo Medrano's motion to suppress the fruits of a search conducted pursuant to a search warrant on December 11, 2002 at 125 Esther Street, Toledo, Ohio (Docket No. 199). The government's response is included in its omnibus response at pages 8 through 15 (Docket No. 267). The magistrate's recommendation as to the pending motion follows.

## BACKGROUND

*\*4* A fifty count indictment filed September 8, 2005, charges twenty-one defendants. Defendant Ricardo Medrano is charged in Count I with conspiracy to possess with intent to distribute cocaine, cocaine base (crack), in violation of 21:841(a)(1) and 846; and in Count IV with possession with intent to distribute cocaine, in violation of 21:841(a)(1). The indictment sets forth the purpose, object, manner and means by which the goals of the conspiracy were allegedly met and describes two hundred thirty four overt acts in furtherance of the conspiracy. The indictment includes a forfeiture specification.

In his motion, Defendant Medrano seeks to suppress the fruits of the search conducted on December 11, 2005.

## DISCUSSION

In this case, a warrant was issued based on the following facts outlined in the affidavit:

1. On December 11, 2002, this affiant along with other members of the Toledo Police Interdiction Unit seized 4 kilograms of cocaine and wrappings from a fifth kilogram of cocaine from a local motel. The subject arrested with the cocaine was Brian Summers. Brian Summers, during interrogation, stated that he lived at 125 Ester street, in Toledo, Lucas County, Ohio, on the east side of Toledo. Summers also stated that he had an additional kilogram of cocaine currently at 125 Ester Street that would be present in a safe that he had recently purchased.

2. Brian Summers further stated that a Hispanic male by the street name of "Okie Dokie" was staying at the location, and was in possession of a 9mm semi-auto handgun. Brian Summers further stated that a large amount of U.S. Currency was present at the location derived from his drug sales.

3. An investigation into the information found 125 Ester to be a valid address located on the east side of Toledo.

4. This affiant has been a police officer for 15 years and has been involved in narcotics investigations for over nine years. This affiant has received training in drug investigations from the United States Drug Enforcement Administration and has also received training in drug interdiction. This affiant has conducted numerous narcotics investigations that have led to the arrest and conviction of narcotics traffickers (Docket No. 270-2, Exhibit 2). Finding risk of physical harm to law enforcement officers and others under O .R.C. § 2933.231(B)(1), Judge Bates issued a warrant authorizing a no-knock night search of 125 Ester Street (Docket No. 270-2, Exhibit 1).

### Sufficiency of No-Knock Affidavit

The critical question is whether the allegations contained in the affidavit were sufficient to show exigent circumstances to justify the no-knock nighttime warrant. *Johnson,* 267 F.3d 498, 500 (6th Cir.2001). Here, two potential exigent circumstances exist: (1) the probable destruction of illegal drug evidence; and (2) the presence of a firearm in "Okie Dokie's" possession.

Although destruction of illegal drug evidence may create an exigent circumstance, the government must assert "imminence". The mere possibility or generalized fear that a party will destroy evidence when faced with a warrant is not sufficient to create an exigency. *U.S. v. Smith,* 386 F.3d 753, 760 (6th Cir.2004); **Bates, 84 F.3d at 796** (citing *U.S. v. Radka,* 904 F.2d 357, 362 (6th Cir.1990); *U.S. v. Becker,* 23 F.3d 1537, 1541 (9th Cir.1994). The fact that the warrant is pursuant to a felony drug investigation does not automatically create exigent circumstances to justify a no-knock warrant. *Richards v. Wisconsin,* 117 S.Ct. 1416, 1422 (1997); *Ingram v. City of Columbus,* 185 F.3d 579, 590

(6th Cir.1999).

**\*5** The affidavit, herein, contains no assertions that would suggest an imminent threat of destruction of evidence. Although it might be asserted that destruction in this case would be easier given the relatively small quantity (1 kilogram), that assertion is weakened by the fact that the affidavit itself states the illegal drugs were in a safe (Docket No. 270-2, Exhibit 2). Even assuming the occupants could unlock the safe, it appears unlikely that the occupants of the searched dwelling would have enough time to open a safe and dispose of evidence in the time it takes officers to "knock and announce." *See United States v. Spikes,* 158 F.3d 913, 927 (6th Cir.1998) (considering the time the warrant was executed, potential of gun-fire, and destruction of illegal drug evidence, the Court found that police acted reasonable by waiting 15-20 seconds before entering the residence).

In **Bates,** the Sixth Circuit rejected an argument for exigent circumstances when officers searched a dwelling containing fifteen kilograms of cocaine. **Bates, 84 F.3d at 796**. The Court reasoned that it would be difficult to quickly dispose of fifteen kilograms of cocaine in the time it takes officers to knock and announce. *Id.* The Court also stated that there was no evidence to suggest that the defendants were likely to dispose of the drugs. *Id.* Although the quantity of evidence in this case is different, the same overall issue is present: it would be difficult to quickly dispose of evidence that was in a safe. Also, like **Bates,** there is no evidence contained in the affidavit to suggest that the occupant of the dwelling *would* dispose of the drugs. In addition, it is not even known whether the occupants of the dwelling had the capacity to open the safe where the drugs were stored to dispose of them. A "mere suspicion" that the drugs would be destroyed, by itself, is insufficient to create exigent circumstances. **Bates, 84 F.3d at 796**. Therefore, exigent circumstances do not exist with respect to presence of illegal drugs.

The affidavit also states that an occupant of the dwelling to be searched possessed a 9mm semi-auto handgun (Docket No. 270-2, Exhibit 2). This circuit has made clear, however, that the mere presence of a firearm in a dwelling to be searched is insufficient to create an exigent circumstance justifying a no-knock warrant. *U.S. v. Smith,* 386 F.3d 753, 760 (6th Cir.2004) (citing **Bates, 84 F.3d at 795).** On the other hand, evidence that the occupant has "**a criminal record reflecting violent tendencies ... can be enough to provide law enforcement officers with justification to forego the necessity of knocking and announcing their presence.**" *Id.* (citing **Bates, 84 F.3d at 795**); *See also U.S. v. Nabors,* 901 F.2d 1351, 1354 (6th Cir.1990) (finding exigent circumstances where the affidavit alleged that Nabors was "suspected of trafficking in narcotics, was a felon in the possession of an array of firearms, and habitually wore a bullet-proof vest.").

**\*6** The fact pattern presented in this case is almost exactly like that presented in **Bates** where officers were informed that a firearm was present in an apartment to be searched. The government argued that the presence of a firearm created an exigent circumstance justifying no-knock entry, but the Sixth Circuit soundly rejected the argument. **Bates, 84 F.3d at 796**. Likewise, in *Smith* this Circuit rejected an argument offered to show exigent circumstances when it was known: (1) that weapons were in the dwelling; and (2) that one occupant was a member of an outlaw biker organization with prior drug and weapons convictions. *Smith,* 386 F.3d at 760.

Here, no evidence was presented in the affidavit to suggest that any of the occupants of 125 Ester Street were violent, had a criminal record, had threatened officers, or had a general reputation for violence. The affidavit merely states that a man by the street name of "Okie Dokie" was in the dwelling and possessed a 9mm semi-auto handgun (Docket No. 270-2, Exhibit 2). This assertion is clearly insufficient to create exigent circumstances under *Smith* and **Bates.**

For all the aforementioned reasons, the affidavit used to obtain the search warrant did not contain sufficient functional allegations and reliable information to support a "no-knock" night search. [FN1]

> FN1. Since probable cause did not exist to issue a no-knock warrant, it would seem self-evident that "urgent necessity" for a night search also did not exist; however, the standard of review for the former inquiry is *de novo;* the later, abuse of discretion. **Bates,** 84 F.3d at 794; *State v. Marko,* 303 N.E.2d 94, 100 (Ohio App. 10th Dist.1973). Even assuming that "urgent necessity" did exist, the warrant would still be problematic for its "no-knock" authority absent exigent circumstances, which have been shown not to exist in this case.

*Good Faith Exception*

Although the warrant may be facially and substantively insufficient, the evidence may nonetheless be used if the evidence was "obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment." *U.S. v. Leon,* 104 S.Ct. 3405, 3413 (1984). The good-faith analysis asks: "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 3421, n. 23. The reasonableness of the officer's reliance upon a search warrant is an objective test and the officer's state of mind is irrelevant. *Id.* at 3414. [FN2] "[Searches] pursuant to a warrant will rarely require any deep inquiry into reasonableness for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.." *Id.* at 3420. "It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination or his/her judgment that the form of the warrant is technically sufficient." *Id.* at 3419.

> FN2. Thus, the officer's fifteen years of experience, herein, would not be relevant that he should have known that his affidavit was insufficient (Docket 270-2, Exhibit 2).

An officer would not act in good faith if the underlying affidavit were "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 3421. (citing *Brown v. Illinois,* 95 S.Ct. 2254, 2265 (1975) (Powell, J., concurring in part). A warrant, so described, is generally one that contains "wholly conclusory statements, with lack of facts and circumstances from which a magistrate can independently determine probable cause." *U.S. v. Satterwhite,* 980 F.2d 317, 320-21 (5th Cir.1992); See also *U.S. v. Williams,* 224 F.3d 530, 533 (6th Cir.2000) ( "Thus, a 'bare bones' affidavit is similar to, if not the same as, a conclusory affidavit. It is "one which states 'only the affiant's belief that probable cause existed.' " *U.S. v. Finch,* 998 F.2d 349, 353 (6th Cir.1993) (quoting *U.S. v. Ciammitti,* 720 F.2d 927, 932 (6th Cir.1983)).

*7 In the present case the no-knock night season warrant was issued based on an affidavit that alleged drugs and U.S. Currency were in the dwelling and that an occupant possessed a 9mm semi-auto hand gun (Docket No 270-2, Exhibit 2). The good faith inquiry is necessarily limited in the present case because a warrant was issued by a detached judicial officer, which generally entitles the officer to act in furtherance of the warrant in good faith. *Leon,* 104 S.Ct. at 3420. Officers are not to second guess a magistrate's probable cause determination; however, an officer may have, nonetheless, acted in bad faith if the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" or states only "the affiant's belief that probable cause existed." *Id.* at 3421 *(citing Brown v. Illinois,* 95 S.Ct. 2254, 2265 (1975) (Powell, J., concurring); *U.S. v. Finch,* 998 F.2d 349, 353 (6th Cir.1993) (quoting *U.S. v. Ciammitti,* 720 F.2d 927, 932 (6th Cir.1983)).

The question, then, is whether the affidavit was merely conclusory or so lacking that it would be entirely unreasonable that an objectively reasonable officer should have refrained from executing the warrant. The affidavit does not appear to be conclusory--that is "merely state the affiant's belief that probable cause existed." Instead the affidavit gives a relevant factual basis that establishes probable cause. The information gathered followed a narcotics arrest, where the suspect specifically named the address and identified it as his residence (Docket 270-2, Exhibit 2). The suspect confessed to possessing cocaine at the address given and the address was verified. *(Id.).* Finally, the suspect warned officers that an occupant of the dwelling was in possession of a 9mm semi-auto handgun. The information was collected on December 11, 2002 *(Id.).* The affidavit and warrant issued the same day, December 11, 2002 (Docket No. 270-2, Exhibit 1). As such, the affidavit was not conclusory and was not so lacking as to render it unreasonable.

Although it might be argued that a reasonable officer should have known that the mere presence of drugs and a weapon does not justify a no-knock night season search, a reasonable officer could conclude that a *combination of* drugs, weapons, and U.S. Currency could give rise to exigent circumstances. O.R.C. § 2933.231(B)(1) states that a no-knock warrant shall issue if the affiant has "good cause to believe that there is a risk of serious physical harm to the law enforcement officers," and the issuing judicial officer agreed such risk existed (Docket No. 270-2, Exhibit 1). The U.S.

Supreme Court has suggested that an officer's good faith would *rarely* be questioned once a detached magistrate has issued a warrant. *Leon,* 104 S.Ct. at 3420. Further the U.S. Supreme Court has stated that when a warrant has been issued and later found to lack probable cause, the exclusionary rule should only be applied when applying the exclusionary rule would deter police misconduct. *U.S. v. McClain,* 430 F.3d 299, 307 (6th Cir.2005) *(citing Leon,* 104 S.Ct. at 3418). This is not a case alleging police misconduct; nor is the affidavit so conclusory or lacking that the officer could not reasonably rely upon it. Therefore, the good faith exception should apply and the evidence should be admitted. Whether the Court's failure to record the probable cause hearing pursuant to O.R. C. § 2933.221(E) renders the warrant ineffective?

**\*8** Ohio Revised Code § 2933.231(E) states:

Any proceeding before a judge or magistrate that involves a request for a waiver of the statutory precondition for non-consensual entry shall be recorded by shorthand, by stenotype, or by any other mechanical, electronic, or video recording device. The recording of and any transcript of the recording of such a proceeding shall not be a public record for purposes of Section 149.43 of the Revised Code until the search warrant is returned by the law enforcement officer or other authorized officer who executes it. This division shall not be construed as requiring, authorizing, or permitting, and does not require, authorize, or permit, the making available for inspection, or the copying, under Section 149.43 of the Revised Code of any confidential law enforcement investigatory record or trial preparation record, as defined in that section.

In this case, law enforcement alleges that the proceeding was taped; however, as of March 17, 2006 no record of the proceeding has been located (Docket No. 270-1, pg. 11, fn 1). Even if no recording were made as required by Ohio law, the Supreme Court of Ohio has consistently held that the exclusionary rule should not be applied absent constitutional violations, unless explicitly required by the legislature. *State v. Baker,* 621 N.E.2d 1347, (Ohio App. 1st Dist.1993) (citing *State v. Thompson,* 514 N.E.2d 407, 415 (Ohio 1987); *Kettering v. Hollen,* 416 N.E.2d 598, 600 (Ohio 1980). See also, *State v. Allen,* 442 N.E.2d 784, 786 (Ohio1981)).

The magistrate finds that the failure to record is clearly a statutory violation of O.R.C. § 2933.231(E); however, such a violation does not trigger the exclusionary rule unless the statutory deprivation is, itself, a constitutional deprivation. Counsel did not cite and the magistrate did not find a decision finding that the deprivation of a probable cause hearing record is, in itself, a constitutional deprivation. Therefore, the violation of O.R.C. § 2933.231(E) does not make the search unreasonable and does not require the evidence to be excluded.

## CONCLUSION

For the foregoing reasons, the undersigned finds that the fruits of the search should be admitted pursuant to the good faith exception and accordingly recommends that the motion to suppress be overruled (Docket No. 199).

N.D.Ohio,2006.

U.S. v. Martinez

Slip Copy, 2006 WL 1080252 (N.D.Ohio)

END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.