EDWARD H. KUBO, JR. 2499
United States Attorney
District of Hawaii

MICHAEL K. KAWAHARA 1460
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Mike.Kawahara@usdoj.gov

Attorneys for Plaintiff
United States of America


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 02-0307DAE |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN OPPOSITION TO |
| | ) | DEFENDANT'S MOTION TO RECON- |
| VS. | ) | SIDER ORDER DENYING MOTION TO |
| | ) | SUPPRESS EVIDENCE; EXHIBITS |
| LENORA JEAN AITCHISON, | ) | "4" AND "6" |
| | ) | |
| Defendant. | ) | (Non-hearing motion) |
| _____ | ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
TO RECONSIDER ORDER DENYING MOTION TO SUPPRESS EVIDENCE**

The United States hereby opposes defendant's request for

this Court to reconsider its "Order Denying Defendant's Motion to

Suppress All Evidence Seized, All Statements of Defendants, and

for Evidentiary Hearing", entered April 24, 2006 (hereinafter

"Order").

At the outset, we address certain evidentiary matters raised

in the reconsideration motion.  <u>First</u>, in footnote 1 of her

supporting memorandum, defendant seeks an opportunity to re-

litigate the factual issue of whether "no trespassing" signs were posted at the entryway to her property on June 27, 2002 (when the HCPD warranted search occurred), by proffering "after-the-fact" Declarations (identified as Exhibits 5 - 8 attached to her reconsideration motion).[1]  Defendant, however, gives no reason whatsoever why she elected not to present such proffered witness testimony at the suppression hearing itself.  Defendant's untimeliness in now seeking to re-litigate this issue is particularly aggravating, because the prosecution specifically inquired of defendant, over one week prior to the April 10 suppression hearing and taking into account that off-island travel of witnesses would be necessary for both sides, whether she was prepared to proceed as scheduled.  Defense counsel's written reply to the U.S. Attorney's Office (a copy of which is attached hereto as Exhibit "6") was:

> . . . I want to inform you that 'yes', I <u>will</u> be prepared to put on evidence at next weeks [sic] hearing with Judge Ezra. My client already booked herself a flight.

> Attached Ex. "6" at 1 [emphasis in original].

The bottom line is that there are no grounds for defendant to now be allowed to re-open the suppression hearing to take new evidence that for her own tactical reasons, she elected not to present in the first instance.

---

[1] As the Court may recall, the HCPD officers who first entered her property did not see any such signs. <u>See</u> Order at 2.

Second, defendant forgets that the videotape recording shot by neighbor Robert Patten was initially proffered by herself in her suppression motion and supporting memorandum. However, defendant thereafter elected not to actually seek the admission of this videotape recording at the suppression hearing. The prosecution offered that videotape recording (marked at Government Exhibit 5) during its rebuttal phase of the hearing for the purpose of impeaching defendant's testimony that the helicopters were flying at "treetop level". For that reason, only a limited portion of the videotape recording was actually played for the Court. It is noteworthy that defendant herself did not ask to have other portions of this recording played for the Court.

A possible reason why defendant elected not to use this videotape recording at the suppression hearing was that it contradicted her suppression contentions. It is correct that at one point in the recording (according to the timer, about 12:45 p.m. or thereabouts), there appeared to be a person and an accompanying bundle consistent with marijuana plants being hauled up on the same cable by a helicopter. However, it is impossible to determine the precise location where this activity occurred. Moreover, as HCPD Officer Hironaka testified, during the same period of time that the state search warrant for defendant's property was being sought, the marijuana eradication operation

3

was in progress elsewhere, including in the Eden Roc subdivision which adjoined the Kopua Farm Lots subdivision where defendant lived.  As indicated in Officer Hironaka's eradication report (Govt Exhibit "4"),[2] 503 marijuana plants <u>ranging from seedlings to 6' in height</u> were recovered from 41 different sites in Eden Roc subdivision.  As indicated in the search warrant return (Exhibit "1" at 6), 876 marijuana plants <u>ranging from seedlings to 3' in height</u> were recovered from defendant's property.  As depicted in this videotape recording, the bundled marijuana plants were as tall as the person hanging from the same cable affixed to the helicopter, and this would be consistent with the approximately 6' tall marijuana plants recovered from Eden Roc and other locations, rather than the shorter 3' plants found on defendant's property.  The bottom line is that it is no wonder that at the suppression hearing, defendant found this videotape recording (which she in the first instance had proffered) to be less than helpful to her.  Consequently, given defendant's decision not to use the videotape recording on her own behalf at the suppression hearing, the prosecution finds it most curious that she now adamantly claims this very same recording entitles her to reconsideration of the Order.

As was the case in her original suppression motion,

---

[2] Admitted at the suppression hearing and a copy of which is attached hereto.

defendant in her reconsideration motion continues to erroneously rely upon Federal case law involving warrantless searches of property, for which the specific legal issue was whether exigent circumstances existed to excuse the warrant requirement.  This was most decidedly not the situation herein, inasmuch as all of the evidence from defendant's property was found and recovered pursuant to a warranted search.  What defendant fails to recognize and address is that Federal law expressly permits law enforcement officers to enter the curtilage of a residence to question the occupants (<u>United States v. Hammett</u>, 236 F.3d 1054 (9th Cir. 2001), and to secure the premises, based upon probable cause, in order to obtain a search warrant therefor. <u>See</u>, <u>e.g</u>., <u>Sequra v. United States</u>, 468 U.S. 796 (1984).  Even defendant's cited case of <u>United States v. Napue</u>, 834 F.2d 1311 (7th Cir. 1987), expressly recognized this distinction.  In <u>Napue</u>, the police officers had conducted a warrantless search of the defendant's hotel room.  The Seventh Circuit agreed with the District Court that "although the police officers did not have a right to search the room, they did have a right to enter the room and secure it [citing as authority therefor the <u>Sequra</u> case]". 834 F.2d at 1325.

Furthermore, the officers' evidence destruction concerns went beyond just the marijuana plants.  As Officer Kanehailua testified, other relevant evidence demonstrating the scope and

extent of defendant's marijuana cultivation/trafficking operation
would include papers and other non-drug evidence which would be
very susceptible of being destroyed.  That defendant went into
her residence (where such relevant non-drug evidence would most
likely be kept) could hardly assuage the officers' evidence
destruction concerns.

Finally, defendant's reliance upon cases construing evidence
destruction concerns to excuse the "knock and announce"
requirement is nonsensical.  Obviously, inasmuch as compliance
with "knock and announce" would only result in a delayed entry
measured in minutes and seconds, it logically would take a
greater "evidence destruction" rationale to justify excusing such
a minimal procedural requirement.  This is hardly the situation
herein, where defendant's interpretation of the Fourth Amendment
would result in a delay measured in hours to obtain a warrant
before the police even enter onto the property.

Defendant also misapplies the holding of Murray v. United
States, 487 U.S. 533 (1988).  In Murray, police officers believed
that a particular warehouse contained marijuana, which was based
upon police observations of trucks departing that location and
subsequently found to be transporting substantial quantities of
the drug).  However, before seeking a warrant, the officers
effected a warrantless entry into that warehouse; while in the
warehouse, the officers observed bales consistent with the

6

appearance of marijuana.  The officers thereafter obtained a
warrant.  The factual basis of the underlying warrant affidavit
only referred to the truck observations; it neither mentioned the
warrantless entry nor what was observed inside that warehouse
during that entry.  The discrete issue in <u>Murray</u> was whether that
this concededly illegal, warrantless entry "tainted" the warrant,
that is to say, whether the officers would have sought a search
warrant, absent the confirmation of marijuana being present in
the warehouse as a result of the illegal entry.  The Supreme
Court's analysis in <u>Murray</u> of the "independent source" doctrine
seemed to imply that the search warrant herein should be upheld,[3]
which was consistent with the Circuit Court's ruling affirming
the denial of the suppression motion.  However, the Supreme Court
reversed on the technical basis that the District Court, and not
the Circuit Court, should appropriately have made such findings.

Herein, as indicated in the warrant affidavit itself, the
identification of marijuana plants growing on defendant's

_____

[3] For example, the Supreme Court opined, 487 U.S. at 541:

To apply what we have said to the present cases: Knowledge
that the marijuana was in the warehouse was assuredly
acquired at the time of the unlawful entry.  But it was also
acquired at the time of entry pursuant to the warrant, and
if that later acquisition was not the result of the earlier
entry there is no reason why the independent source doctrine
should not apply.  Invoking the exclusionary rule would put
the police (and society) not in the *same* position they would
have occupied if no violation had occurred, but in a *worse*
one. [emphasis in original]

7

property was made by three HCPD officers from the air, the first
being Officer Burian.  Officers Kanehailua and Hironaka, flying
in another helicopter, subsequently made an aerial identification
of the marijuana plants, who Officer Burian had requested to come
to this location for this purpose.  These aerial observations, by
themselves, provided more than ample probable cause to support
the issuance of a search warrant, as this Court has already found
in its Order.  There was nothing illegal about these aerial
observations, nor Officer Kanehailua's subsequent ground level
observations when he entered onto defendant's property, to
"taint" the search warrant herein.  In short, the Supreme Court's
concerns expressed in Murray are non-existent in this case.

Lastly, defendant mischaracterizes the scope and extent of
evidentiary hearings necessary in this case.  A limited
evidentiary hearing was necessary for the purpose of establishing
the reasons for Officers Kanehailua and Hatten's warrantless
entry onto defendant's property and to demonstrate the absence of
any Miranda violations.  However, due to defendant's failure to
make a substantial preliminary showing in accordance with Franks
v. Delaware, 438 U.S. 154 (1978), she was not entitled to any
evidentiary hearing concerning the credibility of the warrant
affidavit itself.  And more importantly, to the extent that
defendant believed that other, factual matters not bearing on the
warrant affidavit could be important to her motion, as for

8

example, the alleged presence of "no trespassing" signs, she
could have and should have presented such evidence at the
hearing.  That she failed to do so then gives no justification to
be permitted to do so now.

For the reasons set forth above, defendant's reconsideration
motion should be denied in full.

DATED: Honolulu, Hawaii, May 12, 2006.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By /s/Michael K. Kawahara
   MICHAEL K. KAWAHARA
   Assistant U.S. Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at his last known address:

Served by First Class Mail:

Mr. Jack F. Schweigert                    May 12, 2006
Attorney at Law
550 Halekauwila St., Room 309
Honolulu, HI 96813

    Attorney for Defendant
    Lenora Jean Aitchison


<u>/s/ Rowena N. Kang</u>